## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **LINDA DUMEY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:14-cv-312-GZS** |
| | ) | |
| **JEH JOHNSON, Secretary,** | ) | |
| **U.S. Department of Homeland Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## RECOMMENDED DECISION ON MOTION TO DISMISS

Jeh Johnson, the secretary of the United States Department of Homeland Security, moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss *pro se* plaintiff Linda Dumey's amended complaint in its entirety for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Defendant's Motion To Dismiss the Amended Complaint ("Motion") (ECF No. 11) at 1; Amended Complaint (ECF No. 7). The plaintiff has filed no opposition. *See generally* ECF Docket. On this basis alone, her amended complaint could be dismissed. *See, e.g., Mallard v. Brennan*, No. 1:14-cv-00342-JAW, 2015 WL 2092545, at *10 (D. Me. May 5, 2015) ("Failure to respond to a motion to dismiss means that opposition to the motion is waived, Local Rule 7(b), and the motion may be granted for that reason alone[.]") (citation and internal quotation marks omitted). However, in an abundance of caution, Judge Singal has referred the Motion to me for a recommended decision on its merits. For the reasons that follow, I recommend that the Motion be granted.

## I.   Applicable Legal Standards

### A.   Rule 12(b)(1)

When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court has jurisdiction.  *Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir. 1996).  The moving party may use affidavits and other matter to support the motion, while the plaintiff may establish the existence of subject matter jurisdiction through extrapleading material.  5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 159–60 (3d ed. 2004); *see also Aversa,* 99 F.3d at 1210; *Hawes v. Club Ecuestre el Comandante,* 598 F.2d 698, 699 (1st Cir. 1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements, and an affidavit).

### B.   Rule 12(b)(6)

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted).  This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Román-Oliveras v. Puerto Rico Elec. Power Auth*., 655 F.3d 43, 45 (1st Cir. 2011).  Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the

2

complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard[,]" *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran,* 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of *pro se* plaintiffs "is not to say that *pro se* plaintiffs are not required to plead basic facts sufficient to state a claim").

## II.  Factual Background

The Amended Complaint sets forth the following relevant factual allegations.[1]

The plaintiff worked as an Immigration Services Assistant for the United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("Department").  *See* Annotated Complaint ¶ 24; "Direct Order" issued by FOD Sally Blauvelt on

---

[1] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id.* "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Id.* (citation and internal quotation marks omitted). For ease of reference, I have used a version of the Amended Complaint supplied by the defendant that was annotated solely to add paragraph numbers. *See* [Annotated] Amended Complaint ("Annotated Complaint") (ECF No. 11-1), attached to Motion.

3/26/2013 (ECF No. 7-1), attached to Amended Complaint, at Page ID #81 (containing plaintiff's title).

On March 19, 2013, after an unsatisfactory audit, Sally Blauvelt, Field Office Director of the USCIS Field Office in Portland, Maine, issued a "direct order" decreeing that only three individuals, herself, SISO Cindy Lembarra, and ISA Records Tech Bruce Treadwell, could set foot into the file room. Annotated Complaint ¶ 8.[2]

On April 19, 2013, the plaintiff stepped into the file room, with the permission of one of the three authorized individuals, to point out a bundle of files that needed to be closed out. *Id.* ¶ 1. Blauvelt burst into the file room, yelled in the plaintiff's face, and jabbed her fingers in the plaintiff's face. *Id.*

On June 13, 2013, the plaintiff was served with a proposed two-week suspension without pay for the alleged infraction of stepping into the file room. *Id.* ¶ 2. She requested an Equal Employment Opportunity Commission ("EEOC") hearing, and EEOC representatives did not find in her favor, after failing to consider that she alone was punished, the infraction was extremely minor, she did not even commit the alleged infraction, and Blauvelt had physically threatened her. *Id.* The plaintiff filed a formal complaint with the EEOC, which was procedurally dismissed. *Id.* ¶ 4. She appealed the dismissal, and the EEOC remanded the appeal for reconsideration of age discrimination. *Id.* The EEOC dismissed her claim regarding reprisal, and the plaintiff was given the option to file a complaint in the U.S. District Court. *Id.* ¶¶ 4-5.

Anyone who works for the USCIS understands the importance of physical A-files. *Id.* ¶ 6. Even though a small percentage of files are digitized, and the agency has software to track the status of applications, the physical A-files are still as important as they were 50 years ago. *Id.* An

---

[2] The plaintiff does not explain the acronyms "SISO" and "ISA," but nothing turns on the omission.

officer cannot go into an interview without the A-file. *Id*. Deportation and Investigations officers cannot go to court without the A-file and the original documents it contains. *Id*.

All of the tasks that ISOs and ISAs perform require access to the A-files. *Id*. ¶ 7.[3] The decision by Blauvelt to allow only three persons access to the file room was made without any input from the ISOs and ISAs and without consideration of the fact that employees would have great difficulty doing their jobs without access to the A-files. *Id*. ¶ 8. There were times when one of the three individuals with access to the file room had the day off, another had a meeting outside of the office, and the third was unavailable. *Id*. ¶ 9. If a customer came into the office with a question about a pending application and the three individuals with access to the file room were unavailable, the officer at the front desk would be unable to help the customer without violating the "direct order." *Id*.

Other staff members committed the alleged infraction but were not punished. *Id*. ¶ 10. The officers and support staff who previously could access the A-files had great difficulty with the new rule. *Id*. ¶ 11. Some inadvertently set foot into the file room. *Id*. Others did so because they had no choice. *Id*. Some were caught and spoken to, while others were not. *Id*. None was subject to any disciplinary action. *Id*. Only one person, the plaintiff, was singled out for punishment, and she was punished severely. *Id*.

The plaintiff was with Treadwell, one of the "designated three" who were allowed to be in the file room, with his permission, to show him files that were needed. *Id*. ¶ 13. She did not even commit the alleged infraction of "stepping into the file room." *Id*. She and Treadwell were leaving the file room when Blauvelt burst in, violated the plaintiff's personal space and yelled in her face, while jabbing her fingers in her face, "Don't you know I gave a direct order?" *Id*. ¶ 17.

---

[3] The plaintiff does not explain the acronyms "ISOs" and "ISAs," but nothing turns on the omission.

Ken Sherman, the Acting District Director, was tasked with determining the outcome of the proposed disciplinary action against the plaintiff (the two-week suspension without pay). *Id.* ¶ 25. He upheld the action despite the plaintiff's lengthy written explanation and an in-person meeting with the plaintiff in the presence of Union President Juan-John Somera, during which the plaintiff expressed concerns that (i) the "direct order" was imposed without any discussion with employees who would have to work within its restrictions, (ii) she had Treadwell's permission to be in the file room and, therefore, did not violate the order, (iii) other people had violated the order and were not punished, while a severe punishment was proposed for her, and (iv) extreme events had taken place that week, which was the week of the Boston Marathon bombing, and the plaintiff, Treadwell, and others at the Portland Field Office were concerned and feeling grief on the day of the plaintiff's alleged infraction. *Id.* ¶ 28; *see also id.* ¶ 12. The plaintiff also discussed with Sherman, at length, Blauvelt's physically aggressive behavior, and he admitted that he had never seen such behavior in his years as a federal employee. *Id.* ¶ 29.

### III. Discussion

The plaintiff complains that Blauvelt's aggressive behavior violated the Department's Anti-Harassment Directive, which prohibits harassment even if it does not rise to the level of actionable harassment under the law, *see id.* ¶¶ 1, 3, 15, 18, 22, and constituted a prohibited personnel practice, an apparent reference to "MSPB Dec. No. 2011 MSPB 4[,]" which prohibits "abuse of authority[,]" which occurs when a supervisor uses her influence "to denigrate other staff members with whom [she] disagrees[,]" *id.* ¶¶ 18-21. She seeks to hold the Department vicariously liable for Blauvelt's conduct. *See id.* ¶¶ 23-24.

She also provides a list of authorities that includes (in addition to the Anti-Harassment Directive) 5 U.S.C. § 2302 (Prohibited Personnel Practices), EEOC Management Directive 715

(Federal Responsibilities under § 717 of Title VII and § 501 of the Rehabilitation Act),  EEOC Notice No. 915.002 (Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982), *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  *See id.* ¶ 5.

In the context of discussing the Anti-Harassment Directive and Blauvelt's alleged abuse of authority, she also references, and provides a legal definition for, "assault."  *Id.* ¶ 16.  *See also id.* ¶ 20 ("Blauvelt's physical threatening and assault on Plaintiff that occurred on April 19, 2013, was a prohibited personnel practice and was a violation of basic anti-harassment rules.").

Finally, she alleges, in relevant part, that "Sherman erred by not considering that an environment of workplace harassment, such as exists in the Portland Maine Field Office, could not exist with such blatant impunity without the support and complicity of other members of management in the Portland office, specifically SISO Cindy Lembarra[,]" or "the support and complicity of the Boston District Office, ignoring legitimate complaints regarding the dictatorial rule of its Field Office Director, Blauvelt." *Id.* ¶ 31.  She also asserts that Sherman erred "by not recognizing that physical threatening and assault is a prohibited personnel practice and is a clear violation of DHS Anti-Harassment Directive."  *Id.*

The defendant reasonably construes the Amended Complaint to assert claims pursuant to (i) the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), for "prohibited personnel practices" and/or "abuse of authority," (ii) Section 717 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16, and Section 501 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 791, for employment discrimination and/or hostile work environment arising from harassment, and (iii) common-law assault.  *See* Motion at 3.  He acknowledges that the

Amended Complaint contains a passing reference to age discrimination but does not construe it to set forth a cause of action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. *See id*. at 7 & n.4.  However, he seeks the dismissal of any ADEA claim, as well.  *See id*.[4]

The defendant contends, and I concur, that the Amended Complaint fails to state claims pursuant to the WPA or federal employment discrimination laws and that the court lacks subject matter jurisdiction over any claim of common-law assault.  *See id*. at 5-8.

## A.  WPA Claim

The WPA proscribes 13 enumerated categories of "prohibited personnel practice[s]."  5 U.S.C. § 2302(a)(1) & (b)(1)-(13).  While it mentions "abuse of authority," it does not provide employees a cause of action for that misconduct but, rather, prohibits retaliation against them on account of *protected disclosures of information* that they reasonably believe evidence such misconduct.  *See* § *id*. 2302(b)(8)(A)(ii) & (B)(ii).  *See also, e.g., Cassidy v. Department of Justice*, 581 Fed. Appx. 846, 851 (Fed. Cir. 2014) (pursuant to the WPA, "employees must show that a protected disclosure was a 'contributing factor' to an adverse employment decision by a preponderance of the evidence").

As the defendant points out, *see* Motion at 5-6, the Amended Complaint contains neither an allegation that the plaintiff made a protected disclosure of information nor any facts tending to demonstrate that she did, *see generally* Amended Complaint.

The Amended Complaint, therefore, fails to state a claim pursuant to the WPA.

---

[4] Federal employees may bring suit pursuant to Title VII and the Rehabilitation Act if they exhaust administrative remedies.  *See, e.g., Hernández-Stella v. Shinseki*, 978 F. Supp.2d 105, 111-12 (D.P.R. 2013).  With respect to the ADEA, they may either bypass administrative remedies and sue directly in federal district court or initiate administrative remedies; "[b]ut once a federal employee[] has initiated administrative remedies, they must be exhausted before a suit may be filed."  *Id*. at 112.  The plaintiff alleges that she filed a formal EEOC complaint that was unsuccessful and was given notice of her right to sue in federal district court, *see* Annotated Complaint ¶¶ 4-5, and the defendant does not contest that she exhausted her administrative remedies, *see generally* Motion.

## B.  Employment Discrimination Claims

The defendant correctly notes that, to the extent that the plaintiff complains of workplace harassment and/or a hostile work environment, potentially applicable federal employment laws pertain only to harassment based on an individual's protected characteristic, *i.e.*, race, color, religion, sex, national origin, disability, or age.  *See* Motion at 6; 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 791(f) (incorporating 42 U.S.C. § 12112(a)), 29 U.S.C. § 623(a).  *See also, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of [protected characteristics that include] sex.") (citation, internal punctuation, and emphasis omitted); *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7-8 (1st Cir. 2006) ("The Supreme Court has emphasized that the federal employment discrimination laws do not establish a general civility code for the workplace.  Rather, an employee claiming harassment must demonstrate that the hostile conduct was directed at him because of a characteristic protected by a federal anti-discrimination statute.") (citations and internal quotation marks omitted).

The Amended Complaint is devoid of any allegations, or facts tending to show, that the plaintiff was subject to the harassment and abuse of which she complains as the result of a protected characteristic.  *See generally* Amended Complaint.

The plaintiff, thus, fails to state a claim pursuant to Title VII, the Rehabilitation Act, or the ADEA.[5]

---

[5] The plaintiff's citations to *Faragher*, *Ellerth*, and *Ford*, *see* Annotated Complaint ¶ 5, are unavailing.  Each of those cases addresses issues that would arise in a Title VII case only if an employee stated a claim for discrimination based on a protected characteristic covered by Title VII.  *See Faragher*, 524 U.S. at 780 (holding that "an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim"); *Ellerth*, 524 U.S. at 764-65 (same); *Ford*, 458 U.S. at 241 (holding that, "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability").

### C.  Assault Claim

As the defendant observes, *see* Motion at 8, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, "provides the exclusive remedy" for any claimed assault against the plaintiff by Blauvet, *Roman v. Townsend*, 224 F.3d 24, 27 (1st Cir. 2000).  However, although the FTCA provides a limited waiver of "the immunity of the United States to suit for the tortious actions of federal employees[,]" *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010), the FTCA contains an "intentional tort exception" that "preserves the Government's immunity from suit for "'[a]ny claim arising out of assault,'" *Millbrook v. United States*, 133 S. Ct. 1441, 1443 (2013) (quoting 28 U.S.C. § 2680(h)).[6]

This court, accordingly, lacks subject matter jurisdiction over any assault claim pressed by the plaintiff.  *See, e.g., Hicks v. Office of Sergeant at Arms for U.S. Senate*, 873 F. Supp.2d 258, 271 (D.D.C. 2012) ("Because the FTCA's waiver of sovereign immunity does not apply to Hicks' assault and false imprisonment claims, these claims will be dismissed for lack of subject matter jurisdiction.").

### IV.  Conclusion

For the foregoing reasons, I recommend that the Motion be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which **de novo** review by the district court is sought, together with a supporting memorandum,*

---

[6] This exception, in turn, contains an exclusion that pertains to conduct by investigative or law enforcement officers; however, that has no bearing on the facts of this case.  *See* 28 U.S.C. § 2680(h).

*within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

   *Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

   Dated this 1st day of July, 2015.


                                        /s/  John H. Rich III
                                        John H. Rich III
                                        United States Magistrate Judge

11